RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0289p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

BAYRON JOSE CASTRO-FUENTES, aka Bryon Castro-Fuentes,

*Petitioner*,

*v.*

TODD BLANCHE, Attorney General,

*Respondent*.

No. 25-3407

On Petition for Review of an Order from the
Executive Office for Immigration Review.
No. A 206 637 711.

Decided and Filed: October 27, 2026

Before: SILER, NALBANDIAN, and HERMANDORFER, Circuit Judges.

## COUNSEL

**ON BRIEF:** Kevin Gardner, KBG IMMIGRATION LLC, Independence, Ohio, for Petitioner. Giovanni B. Di Maggio, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

## OPINION

SILER, Circuit Judge. Bayron Jose Castro-Fuentes petitions for review of an immigration judge's ("IJ") order affirming an asylum officer's negative reasonable-fear determination. But Castro-Fuentes has not challenged his final order of removal. Because our jurisdiction is statutorily limited to final orders of removal, we lack jurisdiction to hear Castro-Fuentes's petition. We therefore **DISMISS** the petition.

## I. Background

Previously, Castro-Fuentes, a native and citizen of Honduras, illegally entered the United States and applied for asylum, withholding of removal, and international Convention Against Torture ("CAT") protection. Specifically, he claimed fear that he would be harmed by gangs, who had killed his father in 2007.

In 2017, an IJ denied Castro-Fuentes's applications and ordered his removal to Honduras. Afterward, the Board of Immigration Appeals (the "BIA") dismissed Castro-Fuentes's appeal from the IJ's order denying the applications. Castro-Fuentes did not seek judicial review of the BIA's decision.

In 2021, the Department of Homeland Security ("DHS") removed Castro-Fuentes from the United States. A month later, Castro-Fuentes illegally reentered the United States but was caught by immigration officials. For this illegal reentry, Castro-Fuentes was detained for 23 months.

In 2023, DHS entered a decision to reinstate the 2017 removal order. Castro-Fuentes acknowledged receipt of the decision and indicated that he did not wish to contest the determination.

In 2025, while awaiting removal, an asylum officer conducted a reasonable fear interview. During the interview, Castro-Fuentes stated that he was afraid to return to Honduras because of his opposition to "the politics of Xiomara Castro." He expressed fear of "torture, persecution, and [that] they will kill me." Castro-Fuentes admitted that he had only expressed his opinion of the Honduran president to a few people and that he was not a member of any political party. Castro-Fuentes did not know whether the Honduran government knew of his political opinions. Following the interview, Kevin Gardner, who was representing Castro-Fuentes at the interview, gave a closing statement.

In his decision, the asylum officer found that there "is not a reasonable possibility that the applicant can establish that he will experience persecution on account of a protected characteristic." The asylum officer noted that Xiomara Castro became president after Castro-

Fuentes had left Honduras, that Castro-Fuentes was not a member of any political party, and that a country report released by the United States State Department indicated that there were no reports of political prisoners, detainees, or disappearances by the Honduran government.

Following the asylum officer's decision, Castro-Fuentes sought and received IJ review. At a review hearing, Castro-Fuentes stated that Mr. Gardner was his attorney. When the proceedings continued without Mr. Gardner, Castro-Fuentes asked why his attorney was not present. The IJ responded by noting that "there's nothing showing that he represents you."

Regarding the substance of his claim, Castro-Fuentes again averred that he was afraid of political persecution, torture, and death at the hands of the Xiomara Castro-led government. And he represented that he opposed the Honduran president but that he had not been harmed or threatened. Castro-Fuentes indicated that he was not part of any political organization and that he had not actively protested the government of Honduras. Rather, he stated that "I would only speak to other Hondurans here in the United States against the politics of Xiomara Castro."

On May 7, 2025, the IJ issued an order finding that Castro-Fuentes had not established a reasonable possibility that he would be persecuted on a protected ground or that he would be tortured in Honduras.[1]

## II. Standard of Review

"We review de novo questions of subject-matter jurisdiction." *Doe v. Univ. of Michigan*, 78 F.4th 929, 940 (6th Cir. 2023).

## III. Discussion

On his petition for review, Castro-Fuentes argues that the IJ denied his due process rights when he was not given an opportunity to obtain counsel for the reasonable-fear hearing. He also contends that the IJ's no-reasonable-fear determination was incorrect. Before responding to Castro-Fuentes's claims, however, the government raises the threshold question of subject matter jurisdiction. Specifically, the government contends that because Castro-Fuentes has not

[1] Although Castro-Fuentes's final order of removal issued in 2017 and was reinstated in 2023, the Attorney General has explicitly waived any argument that Castro-Fuentes's petition should be dismissed as untimely.

challenged a final order of removal—a requirement for judicial review—we may not address his claims. Castro-Fuentes has not responded to this argument. "But we have an independent obligation to assure ourselves of our own jurisdiction," *Kerchen v. Univ. of Mich.*, 100 F.4th 751, 759 (6th Cir. 2024), which means we must sometimes "raise and decide jurisdictional questions that the parties either overlook or elect not to press," *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). Here, we do so with the benefit of a series of thorough opinions addressing related jurisdictional disputes.

We have subject matter jurisdiction to review final orders of removal. *See* 8 U.S.C. § 1252(a)(1); 28 U.S.C. § 2342; *Mata v. Lynch*, 576 U.S. 143, 147 (2015) (explaining the interlocking nature of § 1252(a)(1) and § 2342). "In the deportation context, a final 'order of removal' is a final order 'concluding that the alien is deportable or ordering deportation.'" *Nasrallah v. Barr*, 590 U.S. 573, 581 (2020) (quoting 8 U.S.C. § 1101(a)(47)(A)). This definition matters because "all questions of law and fact . . . arising from any action taken . . . to remove an alien from the United States . . . shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). Likewise, "'a petition for review filed with an appropriate court of appeals in accordance with [§ 1252]' is the 'sole and exclusive means for judicial review' of any CAT claim." *Riley v. Bondi*, 606 U.S. 259, 279 (2025) (Thomas, J., concurring) (quoting 8 U.S.C. § 1252(a)(4)). In other words, our jurisdiction—including in CAT cases—extends only to final orders and matters raised in conjunction with final orders on review. *See id.*; *Nasrallah*, 590 U.S. at 581.

Over a trio of recent decisions, the Supreme Court has explained what qualifies as a "final order of removal" under 8 U.S.C. § 1252. Such orders are those "concluding that the alien is deportable or ordering deportation." *Riley*, 606 U.S. at 268. And important here, the Supreme Court in *Riley* instructed that orders addressing withholding and CAT relief do not meet that definition because neither affects "the validity of a previously issued order of removal." *Id.* at 269. Instead, orders granting such relief only prevent removal to a specific country while certain country conditions exist. *Johnson v. Guzman Chavez*, 594 U.S. 523, 531-32 (2021) (quoting 8 C.F.R. §§ 208.16(f), 1208.16(f)). Given that CAT relief is limited in this way, "a CAT order is distinct from a final order of removal and does not affect the validity of the final order of

removal." *Nasrallah*, 590 U.S. at 583. Likewise, "[b]ecause the validity of removal orders is not affected by the grant of withholding-only relief," an order granting or denying withholding of removal is not a final order of removal. *Guzman Chavez*, 594 U.S. at 540. Stated differently, orders addressing CAT relief and withholding relief are not in themselves final orders of removal that allow for judicial review. *See id.*; *Nasrallah*, 590 U.S. at 583.

Nor does 8 U.S.C. § 1252(a)(4) independently provide jurisdiction over orders resolving CAT claims. That provision states that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the [CAT]." But naming the proper vehicle for reviewing a CAT claim (a petition) does not mean that we have jurisdiction to review a petition raising only a CAT claim.

Despite the above, it is worth noting that interlocutory orders sometimes merge into final orders, thus providing jurisdiction for us to consider such interlocutory rulings. *See Campfield v. Safelite Grp., Inc.*, 91 F.4th 401, 409 n.4 (6th Cir. 2024) (quoting Fed. R. App. P. 3 advisory committee's note to 2021 amendments). So, the question becomes whether Castro-Fuentes's CAT and withholding claims merged into his final order of removal, thus allowing judicial review of his claims here. On this question, the Supreme Court's recent analysis also provides the answer. An order denying CAT or withholding relief does not automatically merge into a final order of removal because "final orders of removal encompass only the rulings . . . that affect the validity of the final order of removal." *Nasrallah*, 590 U.S. at 582. And again, rulings on CAT and withholding relief do not affect the validity of final orders of removal. Thus, such orders do not automatically merge into final orders of removal. *See id.*; *Riley*, 606 U.S. at 269.

Also relevant, reinstatement proceedings for a final order of removal eliminate the need for new removal proceedings, and the reinstated order "is not subject to being reopened or reviewed." 8 U.S.C. § 1231(a)(5). Further, "an alien's initiation of withholding-only proceedings does not render non-final an otherwise 'administratively final' reinstated order of removal." *Guzman Chavez*, 594 U.S. at 540. Thus, neither reinstatement proceedings themselves nor withholding and CAT proceedings occurring during the reinstatement process

impact the finality of a removal order. At bottom, the reinstatement process does not provide another path for judicial review.

Here, Castro-Fuentes challenges only the no-reasonable-fear finding by the IJ, a procedural precursor to statutory withholding and CAT relief. *See Guzman Chavez*, 594 U.S. at 531. Because a challenge to a denial of statutory withholding and CAT relief (or a precursor to such relief) is not a challenge to a "final order of removal" or to an order that "affect[s] the validity of the final order of removal," we lack jurisdiction to hear Castro-Fuentes's petition for review under *Riley*. 606 U.S. at 268 (internal quotation marks omitted).

We recognize that this holding departs from our precedent, which for some time has permitted "review of BIA orders on withholding-only and CAT relief." *Kolov v. Garland*, 78 F.4th 911, 918-19 (6th Cir. 2023). In his concurring opinion in *Kolov*, Judge Murphy highlighted the tension between that precedent and the Supreme Court's recent discussion of the limited meaning of "final orders of removal." *Id.* at 924-28 (Murphy, J., concurring) (discussing *Nasrallah*, 590 U.S. 573, and *Guzman Chavez*, 594 U.S. 523). And he predicted that the Supreme Court might soon "decide" whether its recent immigration decisions had "ushered in . . . significant changes to longstanding judicial-review practices." *Kolov*, 78 F.4th at 928 (Murphy, J., concurring).

As mentioned, *Riley* has now given that guidance. According to *Riley*, the Supreme Court's decisions in *Nasrallah*, 590 U.S. 573, and *Guzman Chavez*, 594 U.S. 523, set a "clear" definitional rule that bears on our analysis here: "An order denying relief under the CAT is not a final order of removal and does not affect the validity of a previously issued order of removal or render that order non-final," 606 U.S. at 269. Such orders thus do not provide a standalone basis for exercising jurisdiction under § 1252 and do not merge into review of final orders of removal. That "controlling Supreme Court case trumps" our caselaw's prior allowance of review for withholding and CAT orders outside of a petition for review of a final removal order. *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 815-16 (6th Cir. 2020).

Relying on similar, post-*Riley* reasoning, at least three other circuits agree with our conclusion here. *See Navarrete v. Bondi*, 170 F.4th 1214, 1219-22, 1225 (9th Cir. 2026) (no

jurisdiction to review "negative reasonable-fear determination" or "CAT claims independent of challenges to final orders of removal"); *Hayles v. Att'y Gen.*, 179 F.4th 872, 876, 878 (11th Cir. 2026) (no jurisdiction to review "denial of CAT relief alone"); *Sebastian-Perez v. Blanche*, --- F.4th ---, 2026 WL 2590507, at *2-3 (8th Cir. Sep. 2, 2026) (no jurisdiction "to review the immigration judge's decision on 'reasonable fear' standing alone"). Others, however, have exercised jurisdiction to review withholding or CAT orders issued following reinstatement of a final order of removal. *See Laureano v. Att'y Gen.*, 177 F.4th 453, 457-59 (3d Cir. 2026), *reh'g granted and opinion vacated*, 189 F.4th 342 (3d Cir. 2026); *Navarro v. Blanche*, 186 F.4th 209, 224-25 (4th Cir. 2026); *E.E.V. v. Blanche*, 180 F.4th 954, 969 (7th Cir. 2026).

The cases in the latter group have focused on the reinstatement order itself. They reason that the reinstatement order requires a determination that the alien is removable and operates to remove the alien, thus meeting the definition of a final order of removal and therefore allowing judicial review. *Laureano*, 177 F.4th at 457; *Navarro*, 186 F.4th at 224; *E.E.V.*, 180 F.4th at 966-67. But that jurisdictional reasoning lends no aid to Castro-Fuentes, who has not petitioned for review of the reinstatement order and instead only challenges the subsequent reasonable-fear proceedings. *Cf. Navarrete*, 170 F.4th at 1219 (same posture); *Sebastian-Perez*, 2026 WL 2590507, at *2-3 (same).

In any event, such reinstatement-as-removal-order reasoning appears to contradict the plain language of 8 U.S.C. § 1231(a)(5), which states that a reinstatement order effectuates the prior order of removal—it does not create a new final order. *See Laureano*, 177 F.4th at 472-73 (Matey, J., dissenting). Nor, by statute, can a reinstatement order "affect[] the validity of a final removal order." *Riley*, 606 U.S. at 260; *see* 8 U.S.C. § 1231(a)(5) ("If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date *and is not subject to being reopened or reviewed* . . . ." (emphasis added)). Defining the reinstatement order as a removal order also runs head-long into *Guzman Chavez*'s observation that "an alien subject to a reinstated order of removal will not have any removal proceedings." 594 U.S. at 531-32. "[A]s a matter of ordinary meaning, it would be odd for a

reviewable removal order to come from a non-removal proceeding." *Ruiz-Perez v. Garland*, 49 F.4th 972, 982 (5th Cir. 2022) (Oldham, J., dissenting).

We also respectfully disagree that *Riley* implicitly affirmed judicial review of withholding-only determinations. *See, e.g.*, *Laureano*, 177 F.4th at 457-58; *E.E.V.*, 180 F.4th at 970; *Navarro*, 186 F.4th at 225. In the majority opinion, *Riley* addressed the government's concern that a petitioner would not challenge a denial of withholding-only relief until after the court of appeals resolved challenges to the final order of removal. 606 U.S. at 271-72. The upshot of the government's concern was that aliens would miss the opportunity to challenge orders denying withholding relief because the withholding issue would arise after the resolution of a challenge to the final order of removal. *See id.* In response, the *Riley* Court stated that "the Government can inform aliens of the need to file a petition within 30 days after the issuance of a [final order of removal], and it can alert the court of appeals to the pendency of a withholding-only proceeding so that review there can wait until that issue is decided." *Id.* at 272. The majority in *Riley* thus implied that delaying review of the final order of removal would be necessary to ensure that any challenge to the withholding decision would receive review precisely because the final order of removal is the only source of judicial review. *See id.*

To be sure, the *Riley* Court ultimately remanded the petitioner's withholding-only determination to the court of appeals. But that remand does not reflect the Supreme Court's "necessarily concluding that the court of appeals had jurisdiction" over the withholding-only order. *Laureano*, 177 F.4d at 458-59; *Navarro*, 186 F.4th at 225. As the *Laureano* dissent aptly observed, "[r]eturning the matter rather than reaching for issues outside the writ of certiorari can hardly mean that the Supreme Court 'necessarily' rejected all jurisdictional objections to Riley's petition." 177 F.4th at 474 (Matey, J., dissenting). So, this reasoning infers too much from the Supreme Court's actions in *Riley*.

Ultimately, our reasoning above is consistent with *Riley*'s determination that "[a]n order denying relief under the CAT is not a final order of removal and does not affect the validity of a previously issued order of removal or render that order non-final." 606 U.S. at 269. As a result, we now recognize that *Riley* abrogates our contrary holding in *Kolov v. Garland* and the

constellation of cases relying on it. 78 F.4th at 918-19 (stating that "we remain bound by circuit precedent permitting review of BIA orders on withholding-only and CAT relief").

## IV. Conclusion

For the above reasons, we **DISMISS** Castro-Fuentes's petition for review.